**United States Bankruptcy Court**
District of New Jersey
Mitchell H. Cohen U.S. Courthouse
P.O. Box 2067
Camden, New Jersey   08101

**JUDITH H. WIZMUR**                                                                                      (856) 757-5126
Chief, U.S. Bankruptcy Judge

December 17, 2008

Alyson M. Fiedler, Esq.
Louis T. DeLucia, Esq.
Greenberg Traurig, LLP
200 Park Avenue, P.O. Box 677
Florham Park, New Jersey   07932-0677

Stephen M. Packman, Esq.
Jerrold S. Kulback, Esq.
Archer & Greiner
One Centennial Square
Haddonfield, New Jersey   08033-0968

> **FILED**
> JAMES J. WALDRON, CLERK
>
> December 17, 2008
>
> U.S. BANKRUPTCY COURT
> CAMDEN, N.J.
> BY: Theresa O'Brien, Judicial
> Assistant to Chief Judge Wizmur

      RE:   Premier Food Systems, Inc.
            Case No. 08-14897/JHW
            **LETTER OPINION**

Dear Counsel:

      GE Capital Franchise Finance Corporation ("GEFF"), the principal secured creditor of the debtors herein, and CNL APF Partners, L.P. ("CNL"), a landlord of the debtors, have moved for various types of relief.  Remaining to be resolved are GEFF's entitlement to the alleged remainder of the Pre-Petition Restructure Fee, the post-closing adjustments to CNL, and the amount of attorneys' fees to which GEFF and CNL are entitled under 11 U.S.C. § 506(b) in this case.

      1.   Pre-Petition Restructure Fee.  In November 2007, prior to the filing

of the Chapter 11 bankruptcy cases herein, the debtors entered into a Loan Document Modification Restructuring Letter of Intent with GEFF, whereby, in exchange for the payment of $25,000 payable over the course of the following year, GEFF agreed to modify the terms and conditions of the loan documents relating to the loans owed by the debtors to GEFF.  The debtors failed to make any payments toward the restructure fee.  Mistakenly, through counsel, prior to the closing of the sale of seven of the debtors' nine stores, GEFF notified debtors' counsel that only $18,750 of the restructure fee, rather than the full $25,000 fee, was due.  Debtors paid the amount of $18,750 to GEFF following the closing on account of the restructure fee.  GEFF now seeks to recover the remaining $6,250.

As I reflected at the hearing on October 27, 2008, I believe that GEFF is entitled to recover the full amount due to it under all loan documents, including the entire restructuring fee.  The mistake made by GEFF prior to closing, reflecting incorrectly the amount due, can be corrected.  Sufficient monies have been escrowed to avoid any prejudice to the debtors in correcting the mistake.  The motion of GEFF in this regard is granted.

    2.    <u>Post Closing Fees Due to CNL</u>.  CNL asserts that because certain charges were unable to be confirmed prior to closing on the sale of seven of the

debtors' stores, CNL and the debtors agreed to close with the understanding that the parties would resolve any open issues following the closing.  CNL now asserts that it is entitled to $455.22 for real estate taxes from August 18, 2008 through closing.[1]  CNL is entitled to be paid in full for amounts remaining due.  Monies have been escrowed for this purpose.  CNL's motion in this regard is granted.

      3.    <u>Legal Fees</u>.  GEFF moves for an order authorizing and directing the debtors to pay its attorneys fees in the amount of $116,826.13, and costs in the amount of $2,827.79, as of September 22, 2008.  CNL seeks reimbursement of attorneys' fees in the amount of $5,970.50.  The debtors object to both applications.

      a.    GEFF.

GEFF correctly contends that it is an oversecured creditor who is entitled to reimbursement of its legal fees and expenses pursuant to § 506(b) of the Bankruptcy Code and the underlying loan documents.  GEFF is also correct that the lodestar method for calculating fees, requiring the multiplication of the

---

[1] The previously contested amount of $707 for September business and use taxes has apparently been paid.

number of hours reasonably worked on a case by the reasonable hourly rate, is the appropriate method for ascertaining whether an attorney fee request is reasonable. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").

To place into context the legal services rendered on behalf of GEFF, a brief recitation about the conduct of the case is necessary. The debtors, which operated nine Wendy's Old Fashioned Hamburgers restaurants located in Pennsylvania and New Jersey, under nine separate franchise agreements with Wendy's International, Inc., filed Chapter 11 petitions on March 19, 2008. In the First Day motions submitted to the court, the debtors acknowledged that GEFF held a valid perfected first priority security interest in substantially all of the debtors' assets. On March 25, 2008, the first of six consensual cash collateral orders was entered. On June 27, 2008, the debtors entered into an asset purchase agreement with Wendphil, LLC, whereby the purchaser agreed to act as a stalking horse bidder, subject to higher and better offers, for seven of the debtors' nine restaurants. As to the remaining two restaurants, the Pennsville store lease was rejected by order entered April 10, 2008, and the Roosevelt store lease was rejected by order entered June 24, 2008. An auction

sale of the debtors' remaining assets was held on August 22, 2008, and a sale order was entered immediately following the hearing.  On September 8, 2008, an order amending the sale order and a stipulation and consent order amending the sale order were entered.  The closing took place on September 22, 2008.  Of the $8.1 million sale proceeds, over $5 million was wired to GEFF in satisfaction of the debtors' indebtedness.  As well, nearly $24,000 was wired to CNL, representing the cure amount calculated to that point necessary to assume and assign the leasehold interest to which CNL is a party.  The debtors further escrowed the aggregate amount of $209,007.65, which represented the disputed attorneys fees and legal costs at issue in this motion.

Generally, counsel for GEFF negotiated six cash collateral orders, negotiated the status of GEFF collateral in the Pennsville and Roosevelt stores, participated in the finalization of the asset purchase agreement, bid procedures order and sale order, facilitated the sale of the seven restaurants by providing title searches and UCC searches, and resolved disputes regarding the form of the sale order and the amount of the payoff.

We will examine first the number of hours expended in this matter, and then the hourly rate sought by the applicant.

(1)   <u>Hours Expended</u>.  Objecting to the fees requested by GEFF, the debtors contend that the fees are excessive, duplicative and/or unnecessary.  I have scrutinized the application line by line.  As a general matter, with three exceptions, I conclude that the objections in this regard may be overruled.  While it is certainly true that the positions asserted by GEFF in the case were generally not contested, it was necessary for GEFF counsel to review all of the documents in depth at the outset of the case, to continue to monitor the cash collateral arrangements throughout the case to insure that the GEFF collateral was protected and to insure that the proposed sale arrangements would result in full payment to GEFF on an outstanding debt of approximately $5 million.  Counsel for GEFF appears to have performed these necessary tasks with skill and diligence.  The case was not overstaffed.  Where appropriate, work was delegated properly to an associate, to a junior associate, and to paralegals.  Although two attorneys occasionally participated in telephone conference calls, the bulk of the services rendered were performed by an associate under the supervision of a partner.  The participation of both the partner and associate at times was an acceptable way to allow both participants to be fully informed about the progress of the case. With the exceptions noted below, I do not conclude that any of the services performed were unnecessary to the task of protecting the interests of GEFF and insuring that the obligation to GEFF was paid in full.

The first exception to my conclusion that the hours expended were not excessive relates to the time spent reviewing the Asset Purchase Agreement, the proposed bidding procedures and the proposed sale motion. In the aggregate, nearly 60 hours were spent on these tasks.[2] Certainly, some involvement on behalf of GEFF in the formulation of these documents was necessary. However, the stalking horse bid of $7.4 million, subject to adjustment, exceeded the entire amount of the indebtedness to GEFF by over $2 million. From the vantage point of GEFF, the focus of the sale process was to insure that the claim of GEFF would be satisfied in its entirety. The amount of time spent in this endeavor appears to be excessive. An adjustment of 10 hours will be made. At a blended rate of $450 per hour, the adjustment is $4,500.[3]

The sale hearing took place on August 21, 2008. The open issues as to GEFF were the interest calculation on the indebtedness and the amount of attorneys fees due to GEFF. An agreement was reached between the parties to escrow funds to allow the parties to resolve these issues without holding up the

---

[2] Legal services in connection with the review of these documents was performed between May 5, 2008 and July 10, 2008. The calculation does not include the time spent in authorizing additional cash collateral orders, in reviewing environmental reports, in assisting the prospective purchaser with due diligence requests, and in performing other services unrelated to the Asset Purchase Agreement, the bidding procedures motion and the sale motion.

[3] My calculation of the blended rate is estimated.

sale. The time spent in preparing for the sale hearing on August 20, and attending the August 21 hearing, was 14.3 hours. It appears that the time expended in attending the hearing, 10.5 hours, includes travel time, which is allowed at 50% of the hourly rate, to recognize the more limited nature of the activity involved. An adjustment of $1,500 is made in this regard.

The last category for adjustment is the time spent on drafting a motion for reconsideration of the order approving the sale of the debtors' seven stores, and the stipulation reflecting the consent of the parties regarding the form of order. Because the original order to approve the sale was not fully vetted with counsel for GEFF before it was entered, GEFF sought the amendment of two provisions of the order. Debtors' counsel apparently consented to the changes, but a motion for reconsideration was filed because an amended sale order would not be entered until after the appeal period of the original order had expired. GEFF reflected in the motion for reconsideration that it was filing the motion "out of an abundance of caution and to preserve its rights". Over 24 hours was billed for the drafting of the motion and the stipulation. This does not include counsel's participation in the hearing on September 5, 2008. The number of hours spent on this activity appears to be excessive. An adjustment of $2,000 is made for excessive time spent in this regard.

(2) Hourly Rate. A reasonable hourly billing rate for legal services rendered is generally based on the given geographical area, the nature of the services provided, and the experience of the attorneys. In re Rite Aid Corp. Securities Litigation, 396 F.3d 294, 306 (3d Cir. 2005). Reasonable attorney rates are determined by reference to the market place. In re Datatec Systems, Inc., Securities Litigation, No. 04-CV-525, 2007 WL 4225828, *9 (D.N.J. Nov. 28, 2007) (citing to Missouri v. Jenkins, 491 U.S. 274, 285, 109 S. Ct. 2463, 105 L.Ed. 2d 229 (1989)). "To establish a market rate, the prevailing party must offer evidence that the attorney's usual rate is in line with the market rate in the community. . . . The market rate to be used is the current prevailing market rate at the time the request for fees is made." Id. (citations omitted). Here, the comparative geographical area is the District of New Jersey and/or the Eastern District of Pennsylvania. The services provided pertain to the protection of the interests of the creditor to be repaid over $5 million. The primary shareholder on the case, Louis DeLucia, has over twenty years of experience, and the senior associate on the case, Alyson Fiedler, has eight years of experience.

The applicant has submitted schedules designating the hourly rates charged by two law firms located in North Jersey. The objectors cite the lower hourly rates charged by the firm representing the debtors, which is located in

the Camden vicinage. A chart of these three sets of hourly rates is attached as Schedule A. I have also become aware of a nationwide sampling of law firm billing rates conducted by the National Law Journal, reprinted on December 8, 2008, at http://www.nlj.com, the results of which, as they pertain to the two relevant geographical areas, are contained in Schedule B.

From a review of the comparable market rates charged by other firms, which is in line with my own familiarity of the rates customarily charged in this district, I conclude that the hourly rates charged by the shareholder here, in the range of $525 to $625, and the senior associate at $400 to $425, are reasonable and may be allowed. See, e.g., Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005) (court may take judicial notice of rates in other case within that district). It should be noted that from the designated rates, the firm has voluntarily taken a 10% discount. The Lowenstein Sandler fees listed were hourly rates in effect on August 31, 2007, approximately 15 months ago. The fees for partners and associates in the market place, as reflected in Schedule B, are consistent with the rates sought herein. No adjustment in the hourly rate will be made.

I conclude that an adjustment of $8,000 will be made to the fee application on behalf of GEFF. An award of $108,826.13 in fees, and $2,827.79

in costs, may be awarded.

      b.    <u>CNL</u>.

CNL seeks reimbursement of attorneys fees in the amount of $5,970.50. The tasks performed included the preparation of a proof of claim, an objection to the Cure Statement prepared by the debtors, negotiation and resolution of the cure amount due to CNL, and documentation of the assumption and assignment provisions relating to the CNL lease. All services were performed by the senior associate, Alyson Fiedler. The hourly rate and the time spent were reasonable. No adjustments will be made. The objection to this allowance is overruled.

## CONCLUSION

1.     GEFF may recover $6,250 as the remaining unpaid portion of the pre-petition restructure fee.

2.     CNL may recover $455 for real estate taxes.

3.     GEFF is awarded fees in the amount of $108,826.13 and costs in

the amount of $2,827.79 as of September 22, 2008.

4.   CNL is awarded attorneys fees in the amount of $5,970.50

Counsel for GEFF and CNL shall submit a form of order in conformance with the above.

                        Very truly yours,

                        /JUDITH H. WIZMUR
                        CHIEF JUDGE
                        U.S. BANKRUPTCY COURT

Attachment
JHW:tob

**Schedule A**

In re:    **Premier Food Systems, Inc.**
         **Case No. 08-14897**

## Comparable Hourly Rates

Lowenstein Sandler PC (as of August 31, 2007)

|  | Year Admitted | Range of Hourly Rates |
|---|---|---|
| Shareholders/Members | 1979 - 1986 | $495 - $625 |
| Associates | 2001 - 2005 | $250 - $360 |
| Paralegals |  | $150 - $195 |

Cole, Schotz, Meisel, Forman & Leonard, PC

|  | Year Admitted | Range of Hourly Rates |
|---|---|---|
| Shareholders/Members | 1977 - 2003 | $335 - $625 |
| Associates | 1997 - 2005 | $240 - $310 |
| Paralegals |  | $150 - $215 |

Archer & Greiner   [ Counsel for Debtor ]

|  |  | Range of Hourly Rates |
|---|---|---|
| Partner |  | $375 - $400 |
| Associates |  | $175 - $275 |
| Paralegals |  | $150 - $160 |

**Schedule B**

**In re:** **Premier Food Systems, Inc.**
**Case No. 08-14897**

The National Law Journal
December 8, 2008
http://www.nlj.com

Eastern District of Pennsylvania

|  | **Partners** | **Associates** |
|---|---|---|
| Blank Rome | $425 - $785 | $245 - $485 |
| Cozen O'Connor | $240 - $840 | $205 - $650 |
| Duane Morris | $340 - $755 | $230 - $510 |
| Fox Rothschild | $250 - $590 | $215 - $395 |
| Marshall Dennehey | $135 - $400 | $120 - $300 |
| Montgomery McCracken | $360 - $585 | $195 - $365 |
| Pepper Hamilton | $385 - $795 | $240 - $395 |
| Saul Ewing | $295 - $800 | $205 - $535 |
| Schnader Harrison | $275 - $625 | $160 - $375 |

District of New Jersey

|  | **Partners** | **Associates** |
|---|---|---|
| Day Pitney | $295 - $710 | $220 - $450 |
| Gibbons | $375 - $700 | $220 - $415 |
| Lowenstein Sandler | $400 - $765 | $220 - $405 |
| McCarter & English | $325 - $635 | $215 - $395 |
| McElroy Deutsch | $295 - $450 | $135 - $225 |
| Sills Cummis | $395 - $725 | $215 - $425 |